

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-18-00729-CV

**STATE FARM MUTUAL AUTOMOBILE ASSOCIATION**,
Appellant

v.

Veatrice **COOK**,
Appellee

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-21431
Honorable Stephani A. Walsh, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:          Patricia O. Alvarez, Justice
                 Irene Rios, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: September 18, 2019

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

This is a permissive appeal of a trial court's order denying a motion for summary judgment

which presents the following two controlling questions of law as set forth in the trial court's order:

> In *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006), the
> Texas Supreme Court explained that an uninsured motorist (UM) insurer "is under
> no contractual duty to pay benefits until the insured obtains a judgment establishing
> the liability and underinsured status of the other motorist."
>
> Can a[] UM insured nonetheless sustain a common law or statutory bad faith claim
> against a UM insurer that withholds payment of UM benefits until such a judgment
> is obtained?

Can a UM insured sustain a prompt payment claim against a UM insurer that timely pays UM benefits after such a judgment is obtained?

State Farm Mutual Automobile Association asserts the answer to these questions is "no." With regard to the first question, State Farm argues its liability for the UM claim is not "reasonably clear" until such a judgment is obtained, and no bad faith claim arises as a matter of law until its liability becomes "reasonably clear." With regard to the second question, State Farm argues its liability to pay the claim did not arise until the date the judgment was obtained, and its payment of the claim nine business days after the judgment was entered conclusively established prompt payment as a matter of law. We hold the answer to the first question is "yes," while the answer to the second question is "no."

## BACKGROUND

Appellee Veatrice Cook was injured in an automobile accident when a vehicle driven by Roger Cervantes, an uninsured motorist, collided with her vehicle. Cook filed a claim with State Farm seeking uninsured motorist benefits under her policy's coverage. Cook demanded the full policy limit of $100,000, while State Farm offered to pay $15,255.00. As a result, Cook sued Cervantes and State Farm alleging Cervantes's negligence caused her injuries. With regard to State Farm, Cook asserted a breach of contract claim and extra-contractual bad faith and prompt payment claims. Cook's extra-contractual claims were severed and abated pending a judgment establishing her entitlement to uninsured motorist benefits.

At the trial on Cook's negligence claim, State Farm stipulated Cervantes's negligence proximately caused the accident and Cervantes was an uninsured motorist. The question of damages was submitted to the jury, and the jury awarded Cook: (1) $18,989.05 for past medical expenses; (2) $119,525.00 for future medical expenses; (3) $15,000.00 for past physical pain and mental anguish; (4) $20,000.00 for future physical pain and mental anguish; (5) $50,000.00 for

past physical impairment; and (6) $85,000.00 for future physical impairment. Based on the policy limit, the trial court entered a judgment against State Farm for $100,000.00. The judgment was entered on April 12, 2018, and State Farm paid the judgment in full on April 25, 2018.

On July 31, 2018, State Farm filed a motion for summary judgment in the severed cause asserting it was entitled to a take-nothing judgment on Cook's extra-contractual claims because it was not liable for those claims as a matter of law. As previously noted, the trial court denied State Farm's motion but found an immediate appeal of the aforementioned controlling questions of law would materially advance the ultimate termination of the litigation. This court then granted State Farm's petition for permission to appeal.

## STANDARD OF REVIEW

In a permissive appeal, we consider controlling questions of law. TEX. R. APP. P. 28.3(d)(4). Questions of law are reviewed de novo. *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 536 (Tex. 2019). Similarly, we review summary judgments de novo. *Tex. Workforce Comm'n v. Wichita County*, 548 S.W.3d 489, 492 (Tex. 2018). "Summary judgment is proper when no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Id*.

## BAD FAITH CLAIMS

The first controlling question of law we address is whether an insured with uninsured motorist coverage can sustain a common law or statutory bad faith claim against her insurer based on the withholding of payment of uninsured motorist benefits until the insured obtains a judgment establishing the liability and uninsured status of the other motorist. State Farm primarily relies on the Texas Supreme Court's decision in *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809 (Tex. 2006), in arguing such a claim cannot be sustained. Cook primarily relies on the Fifth Circuit's decision in *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875 (5th Cir. 2004),

and federal opinions following *Hamburger* in arguing such a claim can be sustained. We agree with Cook.

An insurance company owes its insured a duty of good faith and fair dealing. *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). "A breach of the duty of good faith and fair dealing may give rise to a cause of action in tort that is separate from any cause of action for breach of the underlying insurance contract." *Southland Lloyds Ins. Co. v. Cantu*, 399 S.W.3d 558, 568 (Tex. App.—San Antonio 2011, pet. denied) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994)). An insurer acts in bad faith when it fails to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55-56 (Tex. 1997); *see also Mid-Century Ins. Co. v. Boyte*, 80 S.W.3d 546, 549 (Tex. 2002) (recognizing "statutory standard is identical to common-law bad faith standard"). Under the "reasonably clear" standard, "an insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered." *Giles*, 950 S.W.2d at 56. An insurer may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim. *Id*. at 56 n.5; *Southland Lloyds Ins. Co.*, 399 S.W.3d at 569. "[W]hether an insurer acted in bad faith because it denied or delayed payment of a claim after its liability became reasonably clear is a question for the fact-finder." *Giles*, 950 S.W.2d at 56. Similarly, whether an insurer acted in bad faith by failing to reasonably investigate a claim also presents a fact question. *Cf. id*. Although "[a] court may be entitled to decide [a fact] issue as a matter of law when there is no conflict in the evidence, [] when there is evidence on either side, the issue is a fact question" a jury must decide. *Id*.

In *Brainard*, the Texas Supreme Court was confronted with the issue of whether an insured could recover attorney's fees on a breach of contract claim against her insurer. 216 S.W.3d at 817. In order to be entitled to recover attorney's fees, the court first noted the insured was required to

show that: (1) she was represented by counsel; (2) she presented her claim to the insurer; and (3) the insurer failed to pay the just amount owed within thirty days of presentment. *Id*. The court further noted a "UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist." *Id*. at 818. (citing *Henson v. S. Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 653-54 (Tex. 2000)). Finally, the court noted, "[n]either requesting UIM benefits nor filing suit against the insurer triggers a contractual duty to pay," and "[w]here there is no contractual duty to pay, there is no just amount owed." *Id*. Therefore, the court held "a claim for UIM benefits is not presented until the trial court signs a judgment establishing the negligence and underinsured status of the other motorist." *Id*. Accordingly, unless the insurer fails to tender UIM benefits within thirty days after the trial court signs a judgment establishing the liability and underinsured status of the other motorist, the insured is not entitled to recover attorney's fees. *Id*. at 811.

State Farm argues that just like an insurer's contractual duty to pay does not arise until a judgment is entered establishing the negligence and uninsured status of the other motorist, an insurer's liability cannot be "reasonably clear" until such a judgment is entered. Specifically, State Farm argues, "Relatedly, this Court should hold, as a matter of law, that until the insured obtain[s] a judgment establishing the liability of and damages caused by the uninsured motorist, coverage is not reasonably clear and the insurer has a reasonable basis for delaying payment of the claim." Like the federal cases discussing the issue, we disagree that such a holding flows from the analysis and holding in *Brainard*.

In *Hamburger*, the Fifth Circuit acknowledged that in order to prevail on his bad faith extra-contractual claims Perry Hamburger, the insured, "was required to show that [the insurer, which also was State Farm in that case,] knew or should have known it was reasonably clear that Hamburger's UIM claim was covered, but failed to attempt in good faith to effectuate a prompt,

fair, and equitable settlement." 361 F.3d at 880 (citing *Giles*, 950 S.W.2d at 55). The Fifth Circuit also recognized Texas law required Hamburger to "'establish the uninsured motorist's fault and the extent of the resulting damages before becoming entitled to recover [UIM benefits],'" and that "'[a]n insurer has the right to withhold payment of UIM benefits until the insured's legal entitlement is established.'" *Id*. (quoting *Wellisch v. United Servs. Auto Ass'n*, 75 S.W.3d 53, 57 (Tex. App.—San Antonio 2002, pet. denied) (citing *Henson*, 17 S.W.3d at 653). Based on that law, State Farm argued in *Hamburger*, as it does in the instant case, "that coverage of Hamburger's UIM claim was not reasonably clear until the jury determined the extent of Hamburger's damages caused by the other driver" so "no bad faith liability could attach for State Farm's failure to settle the claim prior to the jury's determination of Hamburger's damages caused by the accident." *Id*. The Fifth Circuit rejected State Farm's argument reasoning:

> There are no Texas cases which have squarely held that liability can never be reasonably clear before there is a court determination of proximately caused damages. On the other hand, in *Mid–Century Ins. Co. of Tex. v. Boyte*, the Texas Supreme Court held that an insured does not have a bad faith cause of action against an insurer for the insurer's failure to attempt a fair settlement of a UIM claim after there is a judgment against the insurer, at which time there are no longer duties of good faith and the relationship becomes one of judgment debtor and creditor. *Mid–Century Ins. Co. of Tex. v. Boyte*, 80 S.W.3d 546, 549 (Tex. 2002). If State Farm's position were adopted, an insured such as Hamburger could never successfully assert a bad faith claim against his insurer for failing to attempt a fair settlement of a UIM claim: pre-judgment, liability would not be reasonably clear under *Giles*, and post-judgment, such an action would be barred under *Boyte*. Absent a more clear indication from Texas courts that liability cannot be reasonably clear under *Giles* until the insured is found in a legal proceeding to be entitled to recover, we will not adopt this interpretation of Texas law.

*Id*. at 880-81.

Subsequent federal opinions have rejected arguments that the Texas Supreme Court's opinion in *Brainard* provided the clear indication the Fifth Circuit found lacking in *Hamburger*, noting *Brainard* did not discuss a bad faith claim and its holding was a restatement of *Henson*'s holding regarding contractual liability which the Fifth Circuit expressly recognized. *See Woods v.*

*Argonaut Midwest Ins. Co.*, No. 6:15-CV-139, 2016 WL 3653518, at \*3-4 (E.D. Tex. March 17, 2016); *Accardo v. Am. First Lloyds Ins. Co.*, No. H-11-0008, 2013 WL 4829252, at \*4 (S.D. Tex. Sept. 10, 2013).  As one federal court has explained:

> In *Hamburger*, the Fifth Circuit implicitly recognized that there may be cases in which an insurer's liability to pay UM/UIM benefits is reasonably clear despite the fact that no judicial determination of the UM/UIM's liability has been made.  When a reasonable investigation reveals overwhelming evidence of the UM/UIM's fault, the judicial determination that triggers the insurer's obligation to pay is no more than a formality.  In such cases, an insurer may act in bad faith by delaying payment and insisting that the insured litigate liability and damages before paying benefits on a claim.

*Accardo v. Am. First Lloyds Ins. Co.*, No. H-11-0008, 2012 WL 1576022, at \*5 (S.D. Tex. May 3, 2012).

In the instant case, State Farm also argues a recent opinion from the Dallas court provides the clear indication the Fifth Circuit found lacking when it decided *Hamburger*.  *See Bryant v. Progressive Cty. Mut. Ins. Co.*, No. 05-17-01023, 2018 WL 6521853 (Tex. App.—Dallas Dec. 12, 2018, no pet.) (mem. op.).  In *Bryant*, however, the Dallas court held the insurer and claims adjuster conclusively established they did not fail to conduct a reasonable investigation because the trial resulting in the judgment finding the uninsured driver caused the insured's damages and the amount of those damages was the investigation.  *Id*. at \*6.  The only authority the Dallas court cited in support of this holding, however, was the Southern District's decision in *Weir v. Twin City Fire Ins. Co.*, 622 F. Supp. 2d 483, 486 (S.D. Tex. 2009).  *Bryant*, 2018 WL 6521853, at \*6.  Subsequent federal opinions, however, have refused to follow *Weir*, noting the court failed to discuss *Hamburger* and failed to recognize the standard governing a bad faith claim is different than that of a breach of contract claim in the UM/UIM context.  *See Woods*, 2016 WL 3653518, at \*4; *Accardo*, 2012 WL 1576022, at \*5.  In fact, the *Weir* court criticized the insured for relying on the holding in *Giles* as establishing the standard governing bad faith claims, stating *Giles* was

"not a UIM case." 622 F. Supp. 2d at 486. Texas courts, however, recognize *Giles* establishes the standard governing bad faith claims in the UM/UIM context. *See, e.g. In re Farmers Tex. Cty. Mut. Ins. Co.*, 509 S.W.3d 463, 466 (Tex. App.—Austin 2015, original proceeding*); In re Allstate Tex. Lloyd's*, No. 14-05-00762-CV, 2005 WL 2277134, at *3 (Tex. App.—Houston [14th Dist.] Sept. 2, 2005, orig. proceeding); *Lias v. State Farm Mut. Auto. Ins. Co.*, 45 S.W.3d 330, 334 (Tex. App.—Dallas 2001, no pet.); *Carter v. State Farm Mut. Auto. Ins. Co.*, 33 S.W.3d 369, 372 (Tex. App.—Fort Worth 2000, no pet.).

In *Bryant*, the Dallas court also held the insurer's "liability on the UIM claim was not 'reasonably clear' until the trial court signed the judgment on the claim." 2018 WL 6521853, at *6. The only case cited in connection with this holding, however, was *Brainard* which is inapposite for the reasons previously discussed. Finally, we note *Bryant* is an opinion from a sister court that we are not bound to follow. *See In re A.M.*, No. 04-16-00335-CV, 2017 WL 1337648, at *4 n.3 (Tex. App.—San Antonio Apr. 12, 2017, no pet.) (mem. op.); *In re Griffith*, 485 S.W.3d 529, 536 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding).

Having reviewed the relevant case law, we believe *Hamburger* and the subsequent federal cases provide the better reasoned analysis. *See Davenport v. Garcia*, 834 S.W.2d 4, 20 (Tex. 1992) (noting Texas courts "should borrow from well-reasoned and persuasive federal procedural and substantive precedent when this is deemed helpful"). "Once a legal proceeding establishes that the insured is entitled to UM/UIM coverage and resolves the damages amounts, the bad-faith claim is ripe for consideration." *Accardo*, 2013 WL 4829252, at *5. To hold that a UM/UIM claim is not "reasonably clear" until the conclusion of the legal proceeding "would effectively eliminate the [bad faith] cause of action, with no indication that such a result was intended." *Id.*; *see also Arnold*, 725 S.W.2d at 167 (noting unequal bargaining power in the insurance context allows "unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for

settlement and resolution of claims" and bad faith cause of action is necessary to prevent insurers, who have "exclusive control over the evaluation, processing, and [payment] of claims" from "arbitrarily . . . delaying[ing] payment of a claim"). Accordingly, we hold an insurer can act in bad faith by failing to reasonably investigate or delaying payment on a claim for uninsured motorist benefits until after the insured obtains a judgment establishing the liability and uninsured status of the other motorist.[1]

## PROMPT PAYMENT CLAIM

The second controlling question of law we address is whether a UM insured can sustain a prompt payment claim against a UM insurer that timely pays UM benefits after the insured obtains a judgment establishing the liability and uninsured status of the other motorist. State Farm asserts this question is resolved by this court's holding in *Wellisch v. United Servs. Auto. Ass'n*, 75 S.W.3d 53 (Tex. App.—San Antonio 2002, pet. denied). Cook's brief does not separately address this question.

The Texas Insurance Code "establishes procedures for the prompt payment of insurance claims." *Id.* at 57. "If an insurer delays payment of a claim following its receipt of all items, statements, and forms reasonably requested and required for a period exceeding the period specified in other applicable statutes or, in the absence of any other specified period, for more than sixty days, the insurer shall pay damages and other" amounts provided in the Code. *Id.*; *see also*

---

[1] In her brief, Cook asserts State Farm did not audit the medical records she provided, request a peer review of the documents, ask a surgeon to review the need for future surgery and the estimated cost of the surgery, or conduct any medical evaluation of Cook's condition. Cook further asserts State Farm did not "consider her disc injury, past and future impairment, past and future pain and suffering, or need for future surgery, which itself would cost in excess of $100,000.00." State Farm responds its settlement offer of $15,255.00 was "to cover the cost of the incurred medical expenses, but not the surgery Cook was considering," and it determined the settlement amount was appropriate "based on the medical records, medical bills, and other available documents." Because we only address the controlling question of law set forth in the trial court's order, we do not address whether evidence was or could be presented to raise a fact issue as to Cook's common law and statutory bad faith claims. We note State Farm admitted in its interrogatory responses that it "did not rely on a medical consultant to arrive at its pre-suit evaluation." However, we also note, "Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith." *Moriel*, 879 S.W.2d at 17.

TEX. INS. CODE ANN. art. 542.058. In the UM/UIM context, however, an insurer's liability does not arise until the date a trial court enters a final judgment establishing the liability and uninsured status of the other motorist. *See Wellisch*, 75 S.W.3d at 58. When an insurer promptly pays a UM/UIM claim after the date the trial court enters such a judgment, the insurer does not violate the Code's prompt payment provisions. *Id.*; *see also Mid-Century Ins. Co. of Tex. v. Daniel*, 223 S.W.3d 586, 590 (Tex. App.—Amarillo 2007, pet. denied); *Menix v. Allstate Indem. Co.*, 83 S.W.3d 877, 885 (Tex. App.—Eastland 2002, pet. denied). In this case, the evidence is undisputed that State Farm timely paid Cook nine business days after the trial court entered the judgment establishing Cervantes's liability and uninsured status. Accordingly, the trial court erred in denying State Farm's motion for summary judgment as to Cook's prompt payment claim.

## CONCLUSION

The portion of the trial court's order denying State Farm's motion for summary judgment as to Cook's common law and statutory bad faith claims is affirmed. The portion of the trial court's order denying State Farm's motion as to Cook's prompt payment claim is reversed, and judgment is rendered that Cook take nothing as to that claim. The cause is remanded to the trial court for further proceedings.

Liza A. Rodriguez, Justice